

FILED
DEC 11 2020

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| KATHY L. KOECK,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY;<br><br>Defendant. | 1:19-CV-01011-CBK<br><br>MEMORANDUM OPINION AND ORDER |

This matter is before the Court on plaintiff Kathy L. Koeck's appeal from the decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), Docs. 1 and 10.

## BACKGROUND

Plaintiff originally applied for social security disability benefits on November 26, 2012, alleging a disability onset date of August 31, 2011. Her alleged disability stems from health issues related to Raynaud's syndrome, fibromyalgia, osteoarthritis, and degenerative disc disease. Doc. 11 at 1. Plaintiff filed her supplemental security income claim on June 21, 2013. Plaintiff's claims were denied, first, on August 9, 2013, then, upon reconsideration, on May 29, 2014. See Admin. Rec. at 133 and 131, respectively. Plaintiff then requested an administrative hearing, which was held on June 9, 2015. The administrative law judge ("ALJ") denied plaintiff's claims in a decision issued on July 31, 2015. See Admin. Rec. at 51-61. The Social Security Administration's Appeals Council denied plaintiff's timely request for review of the ALJ's decision on July 20, 2016, making the Social Security Administration's decision in her case final. See Admin. Rec. at 41-3.

Plaintiff appealed the Social Security Administration's decision to this Court, which overturned the ALJ's decision. *See* Koeck v Berryhill, No.1:16-CV-01040-CBK, 2017 WL 4466584 (D.S.D. Oct 4, 2017). This Court found that:

> The ALJ should have, at a minimum, obtained all the records from her treating rheumatologist and the specialists to whom he referred plaintiff for pain. The ALJ should have sought clarification from plaintiff's treating rheumatologist or other treating physicians as to work limitations caused by fibromyalgia, consistent with his responsibility to develop the record fairly and fully.

Koeck, 2017 WL 4466584 at *4. Additionally, this Court found that the ALJ had "failed to specifically find that the plaintiff can work full time as required in Bladow v. Apfel, 205 F.3d 356 (8th Cir. 2000)." Id. This Court reversed the ALJ's decision, in part, and remanded the case to the Social Security Administration for further proceedings.

After this Court's opinion, plaintiff received another hearing before a Social Security Administration ALJ, which was held on January 23, 2019.

The ALJ determined at step one that plaintiff had not engaged in substantial gainful activity since August 31, 2011. Admin. Rec. at 870.

At step two, the ALJ determined that plaintiff's Reynaud's syndrome, fibromyalgia, degenerative disc disease, obesity, major depressive disorder, and anxiety disorder represent severe impairments that more than minimally interfere with her ability to engage in basic work activities. Id. The ALJ rejected any contention that plaintiff's hypothyroidism, diabetes, anemia, or fatigue represent severe impairments. Id.
At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Id.

"Prior to step four, the ALJ must assess the claimant's residual functioning capacity ("RFC"), which is the most a claimant can do despite her limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). The ALJ must also determine "the claimant's age, education, and relevant work experience—the latter three findings being referred to as vocational factors, as opposed to RFC, which is a medical factor." Jones v. Astrue, 619 F.3d 963, 971 (8th Cir. 2010).

The ALJ found that plaintiff had the following RFC:

> The claimant has the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), during the relevant period, as follows: She

2

> could lift and carry 20 pounds occasionally and less than 10 pounds frequently. She could sit a total of 6 hours and stand and walk, combined, a total of 6 hours in an 8-hour workday. She had no limits reaching. She could climb stairs frequently, albeit slowly, but had to avoid climbing ladders, scaffolds and similar devices. She could balance, crouch, kneel, stoop and crawl occasionally. She could handle and finger frequently, but not constantly - bilaterally. She had to avoid any exposure to extreme cold, with no exposure to work hazards such as unprotected heights, fast and dangerous moving machinery. Due to moderate limitations in mental functioning, as heretofore noted, she was limited to work involving only brief and superficial contact with others, while performing only simple, routine and repetitive tasks of two steps on average, on a regular and continuing basis of 8 hours per day, 5 days per week.

Admin. Rec. at 872.

The ALJ supported his RFC finding by evaluating a wide range of plaintiff's medical records. The ALJ found that plaintiff's "medically determinable impairments could cause the alleged symptoms, but her statements as to the intensity, persistence and limiting effects thereof, are not entirely consistent with medical evidence and other evidence of record, for reasons explained herein." Id. at 874. At various points, the opinion notes, plaintiff had MRI, CT and other physical scans that are largely normal. Medical records indicated that over time she had pain and some limitations in her mobility but was otherwise relatively capable.

The ALJ also considered the opinions of plaintiff's various treating physicians as well as a consultative physician, Donald Salmon, M.D. The consultative exam, which occurred in 2014, revealed that plaintiff was able to walk without assistance, though she favored her right side, could squat, and lift up to 40 pounds (according to her). Dr. Salmon also found that plaintiff did not have all the tender points of fibromyalgia and had normal range of motion, including 5 out of 5 strength in her extremities. The results of this exam were virtually repeated in an exam at Sanford Rheumatology in May 2016, and in March 2017 with a Rheumatologist at Avera.

The ALJ also found that plaintiff had been told by several of her treatment providers to exercise in order to improve her functioning, but, by her own admission, she has failed to comply with said recommendations.

3

The ALJ also evaluated plaintiff's mental health in determining her RFC. The record includes many visits to treatment providers. All found that she had full orientation, though she often appeared to be in some distress.

The ALJ considered statements of D. James Eckhoff, M.D., who found that plaintiff's request to take a leave of absence from her work was proper. Dr. Eckhoff determined that this was so because plaintiff might have fibromyalgia flares as often as once per week, necessitating her staying home. The ALJ afforded these statements "some, albeit limited, weight." Reasoning that they were made "prior to the alleged onset date and do not contain vocationally relevant limitations having support in actual objective findings. Additionally, they are speculative in that the claimant 'might' have these flares . . ." Admin. Rec. at 880.

The ALJ went on to examine the opinions of several medical sources that received little weight because they did not provide vocationally relevant limitations. See Id. at 880-81. The ALJ then moved on to the opinions of the state agency medical consultants. He accepts their opinions that plaintiff is capable of a range of light work activity, but finds her more limited due to Raynaud's. Additionally, he affords their opinions only "some" weight because they did not have access to the full longitudinal record at the time of their assessment. The ALJ also considered the opinions of the state agency psychological consultants and accorded them "some" weight. This appears to be because the ALJ found plaintiff to have concentration limitations based on her continuous complaints and her stated improvements due to her use of Vyvanse.

The ALJ then summarized his reasoning for the above RFC as follows:

> In sum, the claimant is no more limited than established by the above RFC assessment as supported by the longitudinal record as a whole. The record establishes the claimant had fibromyalgia, degenerative disc disease, obesity, Raynaud's syndrome, depression and anxiety. She testified to chronic pain and inability to function in a full time work setting due to a need to take several days off per month for work due to pain flares. As support, she submitted FMLA paperwork from a provider dating before the alleged onset date, speculating that she might have flares once per week. Her treatment with specialists for fibromyalgia has been sporadic and inconsistent. She did not follow through on treatment recommendations of providers to improve her functioning by engaging in low impact aerobic exercise. At a consultative exam, she reported ability to

4

> walk two blocks, stand an hour at a time, lift 40 pounds and drive an hour. Treatment notes documented some limitations in lumbar and cervical range of motion as well as some reduced strength in the shoulder. However, those findings were intermittent and she had improvement with conservative treatment measures such as use of a TENS unit, medications and minimal physical therapy. The diagnostic imaging of record shows consistent findings of no more than mild degenerative changes of the spine. Compounding her problems has been obesity. State agency medical consultants assessed a range of light work activity. The undersigned generally accepts those assessments in arriving at the above physical RFC assessment. Mentally, she has had ongoing depression and anxiety. Psychological testing indicates she had average cognitive and memory functioning and the consultative examiner indicated that subjective complaints of concentration and focus difficulty were likely related to depression and anxiety. She had intermittent treatment but more recently, reported improvement with use of Vyvanse and has had stable mental status exams with subjective complaints of worsening mood with psychosocial stressors. Nonetheless, she has been able to maintain relatively intact activities of daily living by maintaining her home, caring for her children and home schooling them. Thus, based on the foregoing, the undersigned finds the claimant capable of less than a full range of light work activity within limitations of the above RFC assessment, on a consistent basis of 8 hours per day for 5 days per week or the equivalent thereof.

Admin. Rec. at 881-82.

At step four, the ALJ found that plaintiff was unable to perform any of her past relevant work under 20 C.F.R. 404.1565 and 416.965.

At step five, the ALJ found that plaintiff could perform work as a marker, photocopy machine operator, and inspector hand packager. In total, these three positions represented 225,000 jobs in the national economy. This finding was based on the testimony of the vocational expert ("VE"). The ALJ found that the VE was an appropriate expert and that the VE's opinions were not inconsistent with the Dictionary of Occupational Titles ("DOT").

The ALJ went on to again deny plaintiff's disability claims in a decision dated February 13, 2019. See Admin. Rec. at 868-84. Also on February 13, 2019, the ALJ notified plaintiff of his unfavorable decision. Admin. Rec. at 866 (emphasis added). Plaintiff then filed this action on June 4, 2019. See Doc. 1.

5

## LEGAL STANDARD

An individual is considered to be disabled if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). *Accord*, Bernard v. Colvin, 744 F.3d 482, 486 (8th Cir. 2014). An individual shall be determined to be disabled "only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

"To be eligible for disability insurance benefits, a claimant has the burden of establishing the existence of a disability under the Act." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Judicial review of the Commissioner's decision that claimant has failed to establish by a preponderance of the evidence that she is disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record as a whole. Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might find it adequate to support the Commissioner's conclusions." Draper v. Colvin, 779 F.3d 556, (8th Cir. 2015) (internal quotations omitted) (*quoting* Travis v. Astrue, 477 F.3d 1037, 1040 (8th Cir. 2007)). "We consider both evidence that detracts from the ALJ's decision, as well as evidence that supports it, but we will not reverse simply because some evidence supports a conclusion other than that reached by the ALJ." McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (internal citations omitted). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJs] decision." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).

6

## DISCUSSION

Plaintiff makes three primary arguments to overturn the Commissioner's decision; (1) that the ALJ failed to fully and fairly develop the record; (2) that the ALJ's RFC determination was not supported by substantial evidence in the record; and (3) that the Commissioner did not carry his burden to identify jobs that plaintiff could perform in the national economy.

Firstly, the ALJ did fully and fairly develop the record. It is true that "[a] social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record." Smith v. Barnhart, 435 F.3d 926, 930 (8th Cir. 2006). But, that said, "[t]here is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mouser v. Astrue, 545 F.3d 634, 639 (8th Cir. 2008) (internal citation omitted).

In this case, the ALJ's opinion includes an evaluation of the records of plaintiff's rheumatologists as this Court said it should. See Koeck, 2017 WL 4466584 at *4. While the ALJ did not seek clarification from said rheumatologist, "[a]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." Hilliard v. Saul, 964 F.3d 759, 763 (8th Cir. 2020), quoting Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994). It is also true that before rehearing, plaintiff submitted further medical records and did not request subpoenas or mention any difficulty obtaining any records. Plaintiff was also represented by counsel at the rehearing. An ALJ's duty to fully and fairly develop the record for review does not require the ALJ to independently find each and every one of plaintiff's medical records. Indeed, the touchstone is whether the ALJ's opinion is supported by substantial medical evidence.

Plaintiff next argues that the ALJ improperly discounted the opinions of Dr. Eckhoff and others of plaintiff's treating physicians. "Consistent with the regulations, we have stated that a treating physician's opinion is normally entitled to great weight, but we have also cautioned that such an opinion do[es] not automatically control, since the

7

record must be evaluated as a whole." Prosch v. Apfel, 201 F.3d 1010, 1012–13 (8th Cir. 2000) (internal citations and quotations omitted).

In this case the amount of weight the ALJ decided to attribute to each treating physician's opinion is supported by substantial evidence. He accords each medical opinion of a treating physician "some" weight. Thus, they are taken into account along with an evaluation of plaintiff's medical records, which contain physician opinions at different points in time—the physicians' treatment notes. The opinions of physicians may be discounted when they do not accord with the time period of the disability claim. Additionally, when an ALJ perceives a claimant's restrictions to be greater than those of a consulting or treating physician, whether based on the subjective complaints of the claimant or the claimant's actual treatment history, an ALJ may properly err on the side of caution by attributing a further limitation to said claimant. Each physician's opinion had some value to the ALJ's opinion, but none was considered controlling. Finally, "[b]ecause a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace . . . However, there is no requirement that an RFC finding be supported by a specific medical opinion." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (internal citations omitted).

Indeed, the touchstone is whether the ALJ's opinion is supported by substantial medical evidence. If the ALJ's opinion has substantial medical evidentiary support in the record as a whole it must be upheld; this has been true so long as there is not overwhelming evidence against the ALJ's opinion or a clear lack of due diligence on the part of the ALJ. Again, just because the evidence may also support a contradictory conclusion to that of the ALJ does not mean that the ALJ's opinion must be overturned. See infra, McDade, 720 F.3d at 998.

In this case, the ALJ's opinion does have substantial support in the record. The ALJ makes perfectly clear in the paragraph quoted above why he arrived at his decision. The opinions of the consulting physician that plaintiff was able to walk without assistance, though she favored her right side, could squat, and lift up to 40 pounds

8

...

(according to her). Dr. Salmon also found that plaintiff did not have all the tender points of fibromyalgia and had normal range of motion, including 5 out of 5 strength in her extremities. The ALJ also states that these results were repeated in the notes of her rheumatological exams from 2016 and 2017. *See* Admin Rec. at 875-76. The ALJ also points to a November 2018 rheumatological exam, at which plaintiff presented with lumbar tenderness, some limited range of motion, and a limp. That said, she had a "relatively intact" physical exam and "showed 5 out of 5 strength with some limitations to range of motion." Admin. Rec. at 876. The ALJ thought this as well as the fact of her conservative treatment protocols supported the conclusion that plaintiff was capable of a "range of light work activity." Id. State agency medical consultants also attributed to her the ability to perform a range of light work activity.

The ALJ also noted that plaintiff continues to engage in the activities of daily life including taking care of her children, homeschooling them, and performing house chores. *See generally* Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) ("*Pena v. Chater*, 76 F.3d 906, 908 (8th Cir.1996) (grocery shopping, driving, and daily child care inconsistent with claims of disabling pain); *Walker v. Shalala,* 993 F.2d 630, 631–32 (8th Cir.1993) (daily activities of driving, cooking and washing dishes inconsistent with claims of disabling pain)"). While such activities of daily life are never definitive proof of anything, they may be taken into account by an ALJ along with other evidence in the record. Plaintiff's activities tend to show that she was capable of some light work or physical activity.

Plaintiff clearly has physical limitations, but the ALJ acknowledged those limitations in his RFC finding. The ALJ's conclusion that plaintiff can perform a range of light work, with certain limitations, while not incontrovertible, is nonetheless supported by substantial evidence in the record.

As for plaintiff's mental health, the ALJ cited mental health treatment notes from 2012 to 2018. In general, plaintiff had normal hygiene and full orientation. Sometimes notes noted that she was emotionally distressed, anxious, irritable, or apprehensive. But

her overall psychiatric assessments were normal. The ALJ also cites diagnostic testing that showed average cognitive functioning and a relatively stable mental status. Admin. Rec. at 877. She had sufficient concentration issues to be prescribed Vyvanse, which was noted to have helped her focus. There is substantial evidence in the ALJ's opinion to support his RFC determination that plaintiff be "limited to work involving only brief and superficial contact with others, while performing only simple, routine and repetitive tasks of two steps on average." Admin. Rec. at 872.

Plaintiff's final argument is that the Commissioner failed to carry his burden to identify jobs that plaintiff could perform in the national economy. In the ALJ's examination of the VE, the ALJ asked a hypothetical in which the hypothetical worker was limited to brief and superficial contact with others, as well as "routine, repetitive tasks about two-steps on average." Admin. Rec. at 948. Plaintiff argues that such a limitation as this, that ended up in the final RFC, limits plaintiff to DOT jobs that demand only Level 1 Reasoning. Level 1 Reasoning, according to the DOT, "requires a worker to "[a]pply commonsense understanding to carry out one- or two-step instructions" and to "[d]eal with standardized situations with occasional or no variables in or from those situations encountered on the job." Stanton v. Comm'r, Soc. Sec. Admin., 899 F.3d 555, 558 (8th Cir. 2018) (internal citation to DOT omitted).

Stanton v. Commissioner of SSA is an instructive case. In Stanton the VE's testimony and the DOT were in conflict, which, the Court found, the ALJ failed to resolve. Id at 559. The issue was that the ALJ's hypothetical limited Stanton's reasoning to Level 1, and yet, the VE testified that someone with Stanton's limitations could perform a job requiring Level 2 Reasoning. Id.

> The Commissioner, however, urges that no conflict exists between the vocational expert's testimony and the Dictionary. Relying on *Moore v. Astrue*, 623 F.3d 599 (8th Cir. 2010), the Commissioner observes that a claimant limited to "carrying out simple job instructions" and to performing "simple, routine and repetitive work activity at the unskilled task level" may be able to perform work requiring Level 2 Reasoning. *Id.* at 604. But *Moore* emphasized that the ALJ decision at issue did not limit job instructions " 'to simple *one- or two-step* instructions' or otherwise indicate

10

that Moore could perform only occupations at a [Dictionary] Level 1 reasoning level." *Id.* The ALJ here did limit job instructions to one- to two-step instructions, and she thereby indicated that Stanton could perform only occupations requiring Level 1 Reasoning.

Stanton, 899 F.3d at 559. In the instant case, the ALJ applied essentially the same limitations to a person with plaintiff's limitations. She was limited to "routine, repetitive tasks about two-steps on average." Admin. Rec. at 948. This limitation corresponds directly to Appendix C of the DOT's definition of Level 1 Reasoning, which require few of task variables and only one to two steps.

Plaintiff is correct that each of the jobs cited by the ALJ—"Marker," "Photocopy machine operator," and "Inspector hand packager"—requires Level 2 Reasoning. See DOT 209.857-034; DOT 207.685-014; DOT 559.687-074. As in Stanton, the ALJ never resolved this conflict. The ALJ does not ask the VE any questions about the plaintiff's reasoning level, nor does the ALJ ask a hypothetical referencing the language of the DOT definition of Level 2 Reasoning.[1] Thus, it must be concluded that the ALJ attributed to plaintiff an RFC with Level 1 Reasoning, but states that she could perform jobs requiring Level 2 Reasoning. As in Stanton, this is reversible error.

IT IS HEREBY ORDERED that plaintiff's motion for summary judgment, Doc. 10, is GRANTED, in part.

IT IS FURTHER ORDERED that the decision of the Commissioner is reversed and remanded pursuant to 42 U.S.C. § 405(g) for further proceedings.

DATED this 11th day of December, 2020.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

---

[1] "02 LEVEL REASONING DEVELOPMENT: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." OALJ Law Library, Dictionary of Occupational Titles, Appendix C, dol.gov, https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC (Accessed December 6, 2020).